Good morning, Your Honor. Barry Morris, appearing for Petitioner Appellant. Ladies and gentlemen, you will know that when you wake up on Christmas Eve morning, because none of you can ever forget Cambray Vice, when you came into this courtroom, your lives were unalterably changed. Your Christmases will be unalterably changed from here on in. You'll have an abiding conviction each Christmas Eve when you wake up, and you will know that you did the right thing when you find Mr. Burgess guilty of murder. And then the prosecutor pointed to what's almost analogous to a Christmas creche, where she had a picture of the Christmas presents that were unopened. Was there an objection? Yes, at the end of the ‑‑ not during the argument. This came at the very end of the rebuttal argument. After the argument was over, counsel objected. In other words, it's in a separate transcript. I think it was the next morning. The next morning, right. Yeah. But she didn't ‑‑ well, you know, when you're in that kind of a situation, you don't ‑‑ it draws almost too much attention to it if you do it in the middle of the objection. She made the judge ‑‑ she made an objection, and the judge attempted to cure the problem. Well, by then it was a little bit late, wasn't it? Well, it's not late in the sense that she couldn't stop it. In other words, when you're in the middle of a closing argument in trial, you've got to be careful not to aggravate the jurors by interrupting the other person, but you have to make your record that that's an improper thing to do. And I think there's no question that she did that, that the defense attorney did that. Now, this event happened on Christmas Eve, correct? Excuse me? The whole incident involving the death of the child happened on Christmas Eve. That's correct. So what's wrong with the prosecutor putting it in the context of Christmas Eve? What's wrong with it is it almost imports a religious significance to the jurors finding the defendant guilty of first-degree murder. Everybody knew that it happened on Christmas Eve, correct? That's the way the facts unfolded. Unfolded. Right. But it doesn't ‑‑ since everybody knew that, bringing it up doesn't focus the jurors' attention on the issues in the case. What it did do, it was a direct appeal to their passions. This is a murder of a 19-month-old baby. This is about the most inflammatory kind of an accusation that you can make. And what the prosecutor sought to do was to hitch the inflammatory accusation with visions of Christmas and telling the jurors that Christmases were ruined if they don't find them guilty of first-degree murder. The magistrate found it was wrong. The ‑‑ Now, the State court of appeal said that it wasn't improper conduct, wasn't an improper argument. That's why we're here. Well, you're here on a, you know, a very deferential standard of review as well. Yes, but it's not an abdication. It's not ‑‑ No, I mean, you know, the prosecutor ‑‑ I mean, the ‑‑ I'm sorry. The district court said this was improper. Correct. But then just because it's improper, you have to also look at all the ‑‑ whether it was harmless. Well, exactly. Prejudice and, you know ‑‑ There was a lot of evidence in the case about what happened here. True. But there wasn't ‑‑ the evidence on premeditation or torture was woefully lacking. This is not a case where I think the defendant planned to kill a 19‑month‑old. Well, it wasn't the evidence that the killing, the tort ‑‑ well, the beatings of this infant went on for over an hour. I mean, I realize that the argument below was that this was like, you know, heat of passion, not torture, but there was evidence from which a jury could decide that it was murder by torture. There was evidence that the prosecutor alleged it could be torture, but the fact of the matter is to say that it took place over the course of an hour or that it took place for an hour are two different things. In other words, and the second thing is the estimate of an hour is coming from a 7‑year‑old and a 4‑year‑old who watched this. I mean, it's an awful case. That's why when you make this kind of an argument, you're throwing gasoline on the fire. Well, I tend to agree with you in the district court that it's improper argument. So then what I went to is would it be objectively unreasonable to find that it did not have a substantial injurious effect on the jury's verdict? And part of your argument actually is an argument why it didn't, because just the facts alone were so ‑‑ the facts, as opposed to the argument, were so inflammatory and horrible. No, I understand that, Judge. What I'm getting at is that there are two kinds of prejudice you can have. One is what I, in my mind, I refer to as linear prejudice, where it has to do with the omission of evidence. And one could kind of balance, well, if this piece of evidence didn't come in, would it make a difference because there were all these other pieces of evidence? And then there's a more dangerous kind of prejudice, which is a general prejudice where it gets the jurors so upset, they say, he's done, we're going to find him guilty and we're not going to dicker over whether or not it was first degree or second degree, we're just going right to the heart of the matter and going to find him guilty. And that's what happened here. Because, you know, all the markers of the ‑‑ it was abandoned, the State abandoned the premeditation and felony murder suggestion. So we're down to torture. And the ‑‑ all the signs of torture, murder, that the courts used to distinguish it between an explosion of anger were not here. There were no statements. In other words, there was nothing in there like I'm going to, you know, I'm going to torture you until you tell me what I want to know or you tell me where the safe is or something like that. Ginsburg. Does the torture have to be for a reason other than just being sadistic? I mean, does it have to involve some sort of extortion or ‑‑ I mean, just being sadistic. Sadistic, but sadistic is a broad term that can include an explosion of anger, which is not torture. Clearly, anybody who beats up a 19‑month‑old baby, he's terrible. I mean, it's just, you know, I have four kids. I can't imagine someone doing something like that, no matter how outrageous they get. There were no prior incidents of mistreatment of the baby. There were no injuries that were ‑‑ Actually, wasn't there? I mean, didn't the autopsy find that there were some older bruises and wounds? No one said that my client did that. No one said that your client did that, but there was ‑‑ this child had experienced some prior beatings. Well, yes. It's a 19‑month‑old baby. The girl used to slide down the stairs. They pulled carpet fibers out of her buttocks, confirming what other people said. She's a 19‑month‑old baby. She's rambunctious. There's an interior stairway in this apartment, and apparently they were left untended for substantial periods of time. One would be surprised if there were no prior injuries on a baby of that age, given that situation. Also, having two siblings who are close enough in age to be older but not that far away that they wouldn't, you know, push the baby or do something improper. But there are none of the ‑‑ you know, for instance, torturing. There are different kinds of wounds that people do when they want to torture people. None of that is present. So none of the objective signs that you could say that this is torture as opposed to an explosion of anger. And frankly, you know, the guy got upset because the baby pooped all over. That's an explosion of anger. I'd like to save a couple of minutes. All right. You may. May it please the Court. Justin Riley on behalf of the warden. The problem with a prosecutorial misconduct claim based on general due process is that the Supreme Court has never found a prosecutor's argument in any regard violates due process as a general concept of due process, let alone in this particular case where a prosecutor makes comments on properly admitted trial evidence, summarizing that evidence, albeit in an impassioned way. Well, she really was calling on the passions of the jurors, wasn't she? I don't know specifically what she was doing. Well ‑‑ Christmas didn't have a specific tie to any ‑‑ You will have an abiding conviction each Christmas Eve when you wake up, and you will know you find Mr. Christopher Burgess guilty of murder in the first degree. Yes, Your Honor. What more could that be than calling upon somebody's passion and prejudice, you know? I believe what the prosecutor was doing there, or what a fair-minded jurist could argue the prosecutor was doing there, is to describe the reasonable doubt standard, abiding conviction. Well, it seems like what she was really doing ‑‑ I tend to think what she was really doing was saying if you don't reach a guilty verdict, you'll be haunted by this forever. And I actually think that's pretty improper. My ‑‑ I guess my real question has to do more with is it reversible under the Brex standard, you know, substantial and injurious effect. Sure. I would like to mention, though, that the Supreme Court has warned that in a prosecutor's ways, the court must interpret it in a way that's permissible. Yeah, I understood. So I put to you that the permissible way of interpreting the prosecutor's argument was that on the one side, it is a very logical interpretation that this will haunt you forever if you don't. But what she's saying is this will not haunt you forever because it is the right decision. This satisfies the reasonable doubt standard. And remember, reasonable doubt in California is abiding conviction forever and always. You will not regret your decision is what she's saying. And that's wholly permissible. As to prejudice, I would remind the Court that you don't look for an improper argument under prosecutorial misconduct and then skip straight to Brecht. Improper doesn't equal due process violation. Due process is such a high standard, even with regard to prejudice, that you look at the curative instruction. For example, in this particular case, immediately upon hearing an objection from defense counsel, the trial court issued a curative instruction. And it all happened the next day. It was the next day. In terms of court time, it was immediate. They broke the case. They came back to court. She finished her argument, correct? Yes, and then they broke for the day. And they broke for the day. Yes. And then something happened overnight. Defense counsel decided he better object, or I don't know. Did he object after the jury left the courtroom? Or did it happen the next morning when they all came back? The record was that I have an objection I'd like to make. Yes. Defense counsel said, actually requested a curative instruction, and immediately the trial court gave that curative instruction. Did he give it right then, or did he give it as part of his package of instructions when he instructed the jury? Because he was about to do that. Right then and standalone. And did he include it as part of his package of instructions as well? Right after. I can't tell you how much time occurred between the standalone, listen, don't pay attention to sympathy or prejudice. Counsel's argument is just argument. And the pattern instructions. I can't tell you how much time passed in between. Okay. So one thing I was, I didn't really understand. So the prosecutor at the trial level put forth three different theories of first degree murder. Is that right? Yes. And so in addition to murder by torture, what were the other two? I'd have to look that up. That's in the uncertified issue, and I didn't. Yeah, I'm just, well, yeah, the reason I'm, the thrust of my question is. Yes. The court of appeals just analyzed the thing under probably the hardest. Torture. Yeah, the hardest thing to prove, right? And not the other two means of getting to a first degree murder conviction here. Yes. The three were willful, deliberate, and premeditated murder. Two, murder by torture. Three, murder in the course of penetration by a foreign object. So I'm just curious why the court of appeal analyzed the murder by torture and didn't analyze the other two. I could guess judicial efficiency. I see that all the time in court opinions in both the Federal and State. We find one reason why he loses, and so we're not going to discuss the other three or four. And it is the most egregious, the most difficult to prove one. Possibly that's why they chose it. If you can't even make the higher standard, then you can't. I'm just speculating. Yeah, I know. I am, too. But it just seems odd that the appellate court shoves that one, that ground. I didn't brief in the State court, so I couldn't speculate any further. I'm sorry. I would also like to just summarize. Remember, this is mostly a claim that the prosecutor's argument so impassioned, so inflamed the jury that they had to rush into the jury room and convict. But remember that the arguably impassioned plea was regarding autopsy, Christmas, and the damage to the victim's body. And there were three medical experts that testified at trial, testified to, in summary, there was damage to, observed bruises to the face, abdomen, and groin. The groin area, said the experts, the damage was very painful. They testified in detail, the doctor that did the autopsy, to significant amount of blunt force and trauma. Contusions to her head, a dent in her forehead, and it went on and on. Her skull being thrown down the stairs. The fact that a 6-year-old couldn't do it. He was the only one there above the age of 6 at the time this happened, and it went on over the course of an entire evening and possibly into the next morning. This was the kind of backdrop that the jury had when they heard this very short paragraph of, quote, impassioned plea, end quote. This was no different than the trial evidence, than the gory, hard-to-listen-to trial evidence. This wasn't going to, the prosecutor's argument wasn't going to ampassion them any more than the trial evidence did. And remember, this is all an analysis of due process and not even getting to Brecht. I would love to answer any more questions. That's all I have. Ginsburg-Margolis. They may have questions? Roberts.  Ginsburg-Margolis.  Thank you. I appreciate it. Thank you, counsel. Briefly. This was done, this argument was at the very end of rebuttal. As someone who has done many, many trials, that's where you let out all the stops, you try and get the jury to come to your side. And that's where the prosecutor chose to put this argument. She conjured up visions of the baby at the Christmas of the year before, and now the baby's in a refrigerator. This was, you know, this was argument calculated to inflame the jury. The fact that the baby had injuries on it does not mean that the baby was tortured. The California, the significant thing about the Court of Appeals' opinion, one of the reasons I think it's so unreasonable, is that they really didn't discuss the holdings of the two major California cases on this issue, which talk about you can't go by the injuries alone because they could have been inflicted in an explosion of anger. You have to find something more than just the injuries. And we don't, you know, to say that it happened for an hour is not supported by the evidence. That there were things that happened during that hour? Yes. That it was an hour of constant beating? No. There is no such testimony. The point is that you can't go by the injuries alone because they could have been inflicted in an explosion of anger.  And we don't, you know, to say that it happened for an hour is not supported by the evidence.   The point is, you can't go by the injuries alone. And so, this is a claim of prosecutorial misconduct, which is a due process violation where you have to basically conclude that her comments infected the entire trial such that the defendant didn't get a fair trial. That's correct. But we're talking about prejudice here, about whether or not the defendant was prejudiced by the argument, and that's where it comes into whether or not the evidence of torture was so overwhelming that no argument would have made any difference. And the really dangerous thing about this kind of argument, it gets the jurors so upset that they don't make those distinctions that they were called upon. I'm not saying my client's not guilty of murder of some sort. What I am saying is that the district attorney's argument was entirely improper and that it inflamed the jurors, and that's the reason why he got first-degree murder and not second or some variety of manslaughter. Okay. Okay. Thank you very much, Your Honor. All right. Thank you, counsel. Burris v. Reynolds is submitted. U.S. v. Sapes has also been submitted on the briefs. So we'll take up Mesquite Grove Chapel v. Pima County Board of Adjustment.
judges: Noonan, Wardlaw, Paez